FILED BY ___ D.C.
SEP 08 2026
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| DONNAHUE GEORGE,<br><br>Plaintiff,<br><br>v.<br><br>ROBINHOOD MARKETS, INC.;<br>ROBINHOOD ASSETS (JERSEY) LIMITED;<br>and DOES 1-20,<br><br>Defendants. | Case No. ________________<br><br>VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF |

**VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF**

**INTRODUCTION**

1. This action concerns an AMC-referenced digital financial instrument marketed as an "AMC Stock Token" that is not a share of AMC Entertainment Holdings, Inc. ("AMC"), does not confer legal or beneficial ownership of AMC, and is issued by Robinhood Assets (Jersey) Limited ("RHJ"), an affiliate within the Robinhood enterprise.

2. Robinhood publicly describes its Stock Tokens as tokenized debt securities issued by RHJ. Robinhood further states that the tokens provide economic exposure to referenced securities but do not grant investors legal or beneficial rights in, or against the issuer of, those underlying securities.

3. Robinhood also represents publicly that Stock Tokens are backed by corresponding underlying securities and promotes an on-chain ecosystem involving trading, lending, borrowing, and collateral use.

4. Robinhood's own disclosure library identifies Final Terms dated August 12, 2026 for tokenized debt securities linked specifically to AMC Entertainment Holdings, Inc.

5. Plaintiff does not allege, without discovery, that Defendants lack the represented backing, have generated false locates, have engaged in naked short selling, or have issued five billion AMC-linked tokens. Plaintiff alleges that the material records necessary to determine the precise issuance, backing, custody, segregation, lending, collateralization, and market interaction of the AMC-linked instrument are principally within Defendants' or their counterparties' possession.

6. Plaintiff seeks narrowly tailored relief preserving the status quo: a temporary halt on the creation or issuance of additional AMC-linked Stock Tokens pending an expedited preliminary-injunction hearing, preservation of relevant records, and limited expedited discovery directed to the AMC-linked product.

7. Plaintiff is an active purchaser and holder of AMC securities. Plaintiff presently holds approximately 1,000 shares of AMC common stock and AMC call-option positions and has repeatedly purchased and sold AMC securities during 2026.

8. Plaintiff alleges that the continued expansion of a parallel AMC-referenced instrument, while the nature and treatment of the purported backing shares remain opaque to Plaintiff, threatens Plaintiff's concrete investment interests. Plaintiff recognizes that ownership alone does not establish Article III standing and therefore pleads injury, traceability, and redressability separately below.

## PARTIES

9. Plaintiff Donnahue George is a natural person residing in Broward County, Florida and is an investor in AMC securities. Plaintiff proceeds pro se unless counsel later appears.

10. Defendant Robinhood Markets, Inc. ("RHM") is a Delaware corporation whose SEC filings identify its principal executive offices at 85 Willow Road, Menlo Park, California 94025.

11. Defendant Robinhood Assets (Jersey) Limited is identified by Robinhood as the issuer of Stock Tokens, including tokenized debt securities linked to U.S. equities.

12. Does 1-20 are persons or entities whose identities and roles in issuance, custody, authorized participation, distribution, lending, collateralization, or other operation of the AMC-linked product are presently unknown. Plaintiff will seek leave to amend when their identities are learned.

## JURISDICTION AND VENUE

13. Plaintiff invokes federal-question jurisdiction under 28 U.S.C. § 1331 to the extent the claims arise under the Securities Exchange Act of 1934 and Rule 10b-5, and supplemental jurisdiction under 28 U.S.C. § 1367 over related state-law claims.

14. Plaintiff seeks declaratory relief under 28 U.S.C. §§ 2201-2202 only as a remedy ancillary to an otherwise justiciable controversy; the Declaratory Judgment Act is not pleaded as an independent source of subject-matter jurisdiction.

15. Plaintiff resides and holds/trades the affected AMC securities in Broward County, Florida. Plaintiff alleges that foreseeable effects of Defendants' challenged U.S.-equity-referenced conduct are experienced by investors in this District. Plaintiff further alleges that Robinhood conducts substantial business with Florida customers through its U.S. operations.

16. Venue is pleaded under 28 U.S.C. § 1391. Plaintiff recognizes that Defendants may contest whether a substantial part of the events or omissions giving rise to the claims occurred in this District. If the Court finds venue improper, Plaintiff requests transfer under 28 U.S.C. § 1406(a) or § 1631, as appropriate, rather than dismissal.

17. Plaintiff specifically preserves the need to establish personal jurisdiction over RHJ. Plaintiff alleges, subject to jurisdictional discovery, that RHJ's AMC-linked product deliberately references a U.S.-listed security, relies on purported U.S.-custodied underlying securities, and operates as part of a coordinated Robinhood Stock Token program. Plaintiff requests limited jurisdictional discovery if RHJ contests jurisdiction.

## FACTUAL ALLEGATIONS

18. AMC common stock is a U.S.-listed equity security. Ownership of AMC common stock carries legal rights materially different from ownership of a debt security merely linked to AMC's market price.

19. Robinhood's public Stock Token materials state that Stock Tokens are tokenized debt securities issued by RHJ and do not grant legal or beneficial rights in the referenced issuer.

20A. Plaintiff has obtained an image purporting to reproduce the AMC-specific Final Terms for Series 191 (ISIN JE00BVY6Y421). The displayed language states that the terms concern "the issuance of up to USD 5,000,000,000 tokenised securities" linked to AMC Entertainment

Holdings, Inc. Plaintiff will rely on this language as an authenticated offering-term fact only after preserving and verifying the complete Final Terms from the issuer's disclosure materials.

20B. The stated USD 5,000,000,000 amount is an issuance ceiling expressed in U.S. dollars. Plaintiff does not allege that five billion AMC tokens or five billion AMC shares have been authorized or issued, and does not allege that the full USD 5 billion capacity has actually been issued. The actual amount issued, number of tokens outstanding, token-to-underlying relationship, and corresponding quantity of AMC shares are subjects for verification and expedited discovery.

20. Robinhood's RHJ disclosure library lists AMC-specific Final Terms dated August 12, 2026.

21. Robinhood's public materials state that Stock Tokens are not registered under U.S. securities laws and may not be offered, sold, or delivered in the United States or to U.S. persons.

22. Robinhood's public materials also describe on-chain applications for trading, lending, borrowing, and collateral involving Stock Tokens.

23. Robinhood's June 30, 2026 Form 10-Q identifies regulatory and litigation risks associated with Stock Tokens and describes RHJ as the issuer of debt securities providing exposure to underlying securities without ownership rights in the referenced companies.

24. In early September 2026, AMC's Chief Executive Officer publicly objected to Robinhood's AMC-linked token program, stated that AMC had not authorized the product, raised concerns about investor understanding and capital formation, and demanded that Robinhood stop the AMC-token activity. Robinhood publicly rejected that demand.

25. Plaintiff's brokerage records show repeated purchases and sales of AMC common stock during 2026 and AMC call-option transactions. Plaintiff presently represents that he holds approximately 1,000 AMC shares and multiple AMC call-option positions.

26. The AMC-linked Stock Token and AMC common stock are legally distinct instruments, but the token derives its economic reference, identity, and price linkage from AMC common stock.

27. The quantity, segregation, custody, and permissible use of the actual AMC shares allegedly supporting outstanding AMC-linked tokens are material to evaluating whether the parallel product can affect the genuine AMC securities market, including through securities-lending, collateral, borrow-availability, or locate-related channels.

27A. Robinhood publicly represents that circulating Stock Tokens are backed by corresponding underlying securities, while its public materials also describe an ecosystem in which Stock

Tokens may be used for trading, lending, borrowing, and collateral. Those public statements do not, on their face, establish whether the underlying AMC shares used as backing are segregated and unencumbered or may themselves enter securities-lending or collateral arrangements.

27B. Plaintiff does not presently know the identity of every custodian, prime broker, prime borrower, securities-lending intermediary, or other counterparty that may possess, control, lend, pledge, or otherwise handle the AMC shares represented as backing the AMC-linked Stock Tokens.

27C. Plaintiff has reviewed public commentary proposing a possible custody-and-lending chain involving Robinhood-affiliated and third-party entities. Plaintiff does not adopt that commentary as proof and does not allege that any identified or unidentified entity has actually loaned AMC backing shares. Plaintiff relies on authenticated records and seeks discovery to determine the actual chain, if any.

27D. The distinction is material because a token holder does not own the referenced AMC share. If the same underlying AMC shares represented as 1:1 backing are also available for lending, pledging, rehypothecation, collateralization, borrow inventory, or locate-related processes, the nature and extent of those uses are facts necessary to evaluate the market consequences and the accuracy and completeness of representations concerning backing.

27E. Plaintiff therefore seeks records identifying the actual custodian and all relevant prime-broker, prime-borrower, securities-lending, authorized-participant, and settlement relationships associated with AMC-linked Stock Tokens, as well as transaction-level records sufficient to determine whether backing AMC shares have actually been loaned, pledged, encumbered, or represented as available to borrow.

28. Plaintiff lacks access to the custody ledgers, mint/burn records, authorized-participant agreements, lending restrictions, collateral arrangements, and internal records necessary to evaluate those matters.

29. Defendants and their counterparties possess or control those records.

30. Plaintiff therefore seeks limited, AMC-specific expedited discovery rather than broad discovery into Robinhood's entire business.

30A. Robinhood's current RHJ Disclosure Library identifies tokenized debt securities linked to AMC Entertainment Holdings, Inc. and GameStop Corp. Plaintiff has not identified a

corresponding RHJ Stock Token linked to Cinemark Holdings, Inc. ("CNK") in that current disclosure library.

30B. Plaintiff alleges that this comparison warrants limited discovery because AMC and Cinemark operate in the same motion-picture exhibition industry, while AMC and GameStop have each historically attracted substantial retail-investor attention. Plaintiff does not allege that the selection pattern, standing alone, proves an improper motive or unlawful targeting of retail investors.

30C. Plaintiff seeks discovery concerning the criteria Defendants used to select or reject securities for Stock Token issuance, including whether expected retail participation, volatility, short interest, securities-lending demand, borrow availability, anticipated token demand, trading volume, revenue, or other market characteristics influenced the selection of AMC, GameStop, Cinemark, or comparable issuers.

## ARTICLE III INJURY, TRACEABILITY, AND REDRESSABILITY

30D. Plaintiff commissioned Donnahue George Investigations to prepare a six-month AMC Market Integrity Analysis covering March 1 through August 31, 2026. A true and correct copy of that report is attached as Exhibit I. The report is an investigative analysis of public market information and is offered to identify market-structure questions warranting discovery, not as an expert opinion establishing liability or manipulation.

30E. Exhibit I reports that AMC's monthly trading volume increased from approximately 576.8 million shares in March 2026 to approximately 1.12 billion shares in June and approximately 1.15 billion shares in July, before declining to approximately 447.4 million shares in August. The report treats those turnover levels as market-integrity indicators requiring context rather than as proof of wrongdoing.

30F. Exhibit I further reports that publicly reported AMC short interest declined from approximately 118.1 million shares on March 13, 2026 to approximately 42.4 million shares on August 14, 2026. The report expressly distinguishes reported short interest from daily short-sale volume and does not infer manipulative short selling from that decline.

30G. Exhibit I also identifies substantial issuer-driven changes in AMC's capital structure during the review period, including shares issued through note exchanges, an at-the-market program, and a June registered direct offering. The report treats those share issuances as significant

confounding variables that must be controlled for before attributing AMC price, volume, borrow, short-interest, or settlement behavior to any Defendant.

30H. The report separates March through June principally as a pre-Stock-Token baseline from July and August as the transition and post-launch observation period because Robinhood publicly disclosed that Stock Tokens launched in July 2026 and RHJ's disclosure library dates the AMC-specific Final Terms to August 12, 2026.

30I. Exhibit I does not contend that public fails-to-deliver data establish naked short selling. Consistent with the SEC's published methodology, the report treats an FTD value as an aggregate net settlement balance at a particular settlement date and recognizes that an FTD may arise from long or short sales. The report instead recommends aligning FTD dates with consolidated and off-exchange volume, reported short-sale volume, stock-loan data, options activity, issuer share-delivery dates, and any Stock Token mint, burn, backing-share, custody, or hedging activity.

30J. The principal unanswered question identified by Exhibit I is whether the creation, redemption, collateralization, lending, custody, or hedging of AMC-linked Stock Tokens generated transactions, stock-loan activity, locates, collateral movements, or derivative positions involving AMC common stock that cannot be attributed from consolidated public data.

30K. Public data do not identify the beneficial owner, executing broker, market maker, securities lender, locate provider, custodian, Authorized Participant, or counterparty behind particular Stock Token-related activity. Plaintiff therefore seeks targeted discovery to determine whether and how the Stock Token structure interacted with the underlying AMC market.

30L. Plaintiff does not allege that the statistical patterns summarized in Exhibit I, standing alone, prove manipulation, naked short selling, false locates, or a Regulation SHO violation. Plaintiff relies on the report to narrow the factual questions for discovery and to preserve a distinction between observed market data and allegations requiring evidentiary support.

31. Plaintiff alleges a personal economic interest in the integrity of the market for securities he owns and trades, including approximately 1,000 AMC shares and AMC call options.

32. Plaintiff alleges that the challenged conduct is not merely an injury to AMC as a corporation. Plaintiff challenges Defendants' creation and expansion of a separate AMC-referenced financial instrument and the alleged effects of that conduct on the market in which Plaintiff directly purchases, holds, and sells AMC securities.

33. Plaintiff alleges threatened injury from continued expansion of the challenged AMC-linked product before the backing, custody, segregation, and permitted use of the underlying AMC shares can be tested.

34. Plaintiff alleges traceability because the requested interim relief is directed only to Defendants' own creation and issuance of additional AMC-linked Stock Tokens, not to independent conduct by AMC or unrelated market participants.

35. Plaintiff alleges redressability because an order temporarily preventing additional issuance would stop the challenged expansion during the short period necessary for an expedited preliminary-injunction record.

36. Plaintiff acknowledges that generalized concern over market integrity, standing alone, is insufficient. Plaintiff therefore relies on his direct AMC securities positions and alleges a presently threatened injury from Defendants' continued expansion of the specific AMC-referenced instrument.

**COUNT I - SECTION 10(b) AND RULE 10b-5 (PLEADED SUBJECT TO PROOF OF TRANSACTION CONNECTION, SCIENTER, RELIANCE/CAUSATION, AND LOSS)**

37. Plaintiff incorporates paragraphs 1-36.

38. Section 10(b) and Rule 10b-5 prohibit, in connection with the purchase or sale of securities, deceptive devices, material misstatements or omissions, and schemes or practices operating as a fraud or deceit.

39. Plaintiff alleges that Defendants market and operate an AMC-referenced debt security while the actual AMC equity backing, segregation, lending status, and relationship between token issuance and the genuine AMC market are facts uniquely known to Defendants and material to evaluating the product's market effects.

40. Plaintiff alleges that he purchased and sold AMC securities during the period in which Defendants' AMC-linked product existed or expanded. Plaintiff will identify each transaction relied upon for this Count from authenticated brokerage records.

41. Plaintiff does not presently allege a false statement concerning 1:1 backing unless discovery or authenticated evidence establishes falsity. Rather, Plaintiff alleges that any materially misleading representation or omission concerning backing, custody, segregation, lending, or the

nature of the AMC-linked product that is shown to have been made with the required scienter and in connection with Plaintiff's transactions is actionable.

42. Plaintiff recognizes that a private Rule 10b-5 claim requires satisfaction of all elements, including a purchase or sale, material misrepresentation or manipulative/deceptive conduct, scienter, transaction connection, reliance where applicable, economic loss, and loss causation.

43. Plaintiff seeks leave to amend this Count as permitted by Rule 15 if expedited discovery supplies particularized facts required by Rule 9(b) and the PSLRA.

44. Plaintiff seeks only relief legally available to a private plaintiff under the Exchange Act.

## COUNT II - FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLA. STAT. §§ 501.201 ET SEQ. (ALTERNATIVE; SUBJECT TO STANDING AND TERRITORIAL APPLICATION)

45. Plaintiff incorporates paragraphs 1-36.

46. Plaintiff alleges, in the alternative, that marketing or operating an AMC-branded or AMC-ticker-referenced financial product in a manner likely to create a materially misleading impression concerning ownership, shareholder rights, backing, or equivalence to AMC common stock may constitute an unfair or deceptive act or practice.

47. Plaintiff has not alleged that he purchased an AMC Stock Token. This Count is therefore pleaded cautiously and only to the extent Florida law recognizes Plaintiff's alleged direct injury from the challenged practice.

48. Plaintiff seeks declaratory and prospective relief only to the extent authorized by Florida law and reserves amendment upon development of facts concerning Florida-directed conduct and injury.

## REQUEST FOR DECLARATORY AND EQUITABLE RELIEF

49. An actual controversy exists concerning the continued creation and issuance of an AMC-referenced debt security that is legally distinct from AMC common stock and the effect of Defendants' representations and practices on Plaintiff's legally protected interests.

50. Plaintiff seeks a declaration only insofar as supported by a valid substantive claim and Article III jurisdiction.

51. Plaintiff seeks temporary and preliminary injunctive relief narrowly limited to preventing additional creation or issuance of AMC-linked Stock Tokens while the Court develops an expedited record.

52. Plaintiff does not presently seek cancellation, forced redemption, or destruction of tokens already held by third parties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Temporarily restrain Defendants, and persons acting in active concert or participation with them who receive actual notice, from minting, creating, issuing, or causing the issuance of additional AMC-linked Stock Tokens pending an expedited preliminary-injunction hearing;

B. Order preservation of AMC-token-specific documents, ESI, blockchain records, wallet records, custody records, mint/burn records, authorized-participant records, securities-lending records, collateral records, and communications;

C. Permit narrowly tailored expedited discovery as set forth in Plaintiff's accompanying motion;

D. Set an expedited briefing schedule and preliminary-injunction hearing;

E. Enter declaratory and permanent equitable relief if Plaintiff ultimately proves entitlement to such relief;

F. Award Plaintiff compensatory and actual damages in an amount to be determined at trial, including all recoverable economic damages proven to have been caused by Defendants' unlawful conduct, together with pre-judgment and post-judgment interest;

G. To the extent legally available on a claim for which punitive or exemplary damages may be recovered, preserve Plaintiff's right to seek such damages in accordance with applicable substantive and procedural law, including any required motion for leave or evidentiary showing;

H. Award Plaintiff taxable costs and any other monetary relief permitted by law; and

I. Grant such other and further declaratory, injunctive, equitable, monetary, or other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## VERIFICATION

I, Donnahue George, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have reviewed this Verified Complaint; that factual statements concerning my own holdings and transactions are true and correct to the best of my personal knowledge; and that statements concerning Defendants and public materials are based on the sources identified in the accompanying exhibits and are believed true after reasonable inquiry.

Executed on September 8, 2026, in Broward County, Florida.

9/8/26

DONNAHUE GEORGE, Plaintiff Pro Se
1012 NW 2nd St.
Fort Lauderdale, Florida 33311
Telephone: (347) 216-5257
Email: DonnahueGeorge@gmail.com